**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH SIMMONS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-1644** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of

the Motion to Dismiss Plaintiff's Amended Complaint, brought by the City of Philadelphia,

Warden Michele Farrell, Warden Nancy Giannetta, and Prison Commissioner Blanche Carney, it

is **HEREBY ORDERED** that the Motion is **GRANTED.** The Amended Complaint is

**DISMISSED WITH PREJUDICE.**

BY THE COURT:

_____
JOHN M. GALLAGHER, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH SIMMONS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | **Civil Action** |
| v. | : | **No. 22-1644** |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

<u>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM**</u>

Defendants City of Philadelphia, Warden Michele Farrell, Warden Nancy Giannetta, and Prison Commissioner Blanche Carney ("Moving Defendants"), by and through the undersigned counsel, hereby file this Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, Moving Defendants incorporate the attached Memorandum of Law. Moving Defendants respectfully request that this Court dismiss the claims asserted against them, with prejudice.

February 3, 2023                    Respectfully submitted,


                                   /s/ Kathryn Faris
                                   Kathryn Faris
                                   Deputy City Solicitor
                                   Pa. Attorney ID No. 318580
                                   City of Philadelphia Law Department
                                   1515 Arch Street, 14th Floor
                                   Philadelphia, PA 19102
                                   215-683-5445 (Phone)
                                   215-683-5397 (Fax)
                                   Kathryn.faris@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH SIMMONS,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-1644** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

The allegations in Plaintiff's Amended Complaint arise from injuries sustained during a tragic sexual assault suffered by the Plaintiff, Joseph Simmons, by his cellmate at the Curran-Fromhold Correctional Center (hereinafter "CFCF). As alleged in the Amended Complaint, Plaintiff was incarcerated at CFCF when, on or about February 22, 2021, he was brutally attacked by his cellmate, who was exhibiting symptoms of decompensating mental health. *See gen.* Am. Compl. Plaintiff brings suit against the City of Philadelphia (the "City"), Warden Michele Farrell, Warden Nancy Giannetta,[1] and Prison Commissioner Blanche Carney (collectively, "Answering Defendants") for alleged violations of his constitutional rights. Defendants now move to dismiss each of the claims against them.

I.    **ALLEGATIONS IN THE AMENDED COMPLAINT**

Plaintiff's Amended Complaint arises from an inmate-on-inmate assault that occurred in CFCF on or about February 22, 2021. Am. Cmplt. ¶ 29.   Plaintiff alleges that he was originally

---

[1] Plaintiff misspells Warden Giannetta's name in his Complaint and case caption. Defendants utilize the correct spelling throughout their motion.

housed with his assailant cellmate in October 2020 after Plaintiff was placed in administrative

segregation following discipline for use of abusive language. *Id* at ¶ 20. Plaintiff alleges his

cellmate had a reputation amongst prisoners and staff for unpredictable mood swings and violent

tendencies. *Id* at 24. Between October and November of 2020, Plaintiff alleges that he suffered

multiple physical assaults by his cellmate but did not report them immediately. *Id* at ¶¶ 27-28.

Plaintiff claims that at some point in December 2020 he reported to an unnamed correctional

officer that he was fearful for his safety with his cellmate. *Id* at 29. Plaintiff alleges that despite his

concerns, he was still housed with the same cellmate in February 2021. *Id* at 30.

Plaintiff alleges that on February 21, 2021, his cellmate began accusing Plaintiff of reading

his mail, touching his belongings, and plotting to harm him. *Id* at 32. The cellmate began

threatening Plaintiff with physical violence and those threats increased over time. *Id* at 34. Plaintiff

alleges that he reported this behavior to unnamed correctional officers for several days and asked

to be moved for fear of being assaulted. *Id* at 36. Plaintiff's concerns peaked on February 22, 2021

when he pressed his cell's emergency call button at 10:00 pm and told John Doe CO 1 that he

feared for his life and was in imminent danger. *Id* at ¶ 37.

According to the Amended Complaint, John Doe CO 1 was the only staff member on duty

in the unit on February 22, 2021 during the evening hours. *Id* at ¶ 38. Plaintiff alleges that, despite

his reports, John Doe CO 1 did nothing to assist Plaintiff but stated he would log the concerns and

advise his sergeant and lieutenant of the same. *Id* at ¶ 39. Plaintiff then alleges that John Doe CO

1 left the unit and that no other correctional officer came to relieve him. *Id* at ¶ 40.

Plaintiff alleges that throughout the night, no correctional staff was on duty in the unit, thus

allowing Plaintiff to be victimized by his cellmate for several hours without intervention. *Id* at ¶¶

41-58. As a result of the attack, Plaintiff suffered a chip tooth, a human bite mark to his face, a

sprained wrist, and swollen genitals. *Id* at ¶ 60. Plaintiff alleges that the next morning, when a corrections officer interacted with Plaintiff and his cellmate, Plaintiff did not report the attack out of fear for his safety. *Id.* Later that day, Plaintiff allegedly reported the attack to unnamed correctional staff and requested medical attention from the same. *Id* at 61. Despite this request and his obvious injuries, Plaintiff alleges the unnamed correctional staff failed to send him to medical. *Id* 62. Several days later, Plaintiff alleges he was transported to Jefferson Torresdale hospital for treatment. *Id* at 66.

Plaintiff alleges that no PREA report was generated by correctional staff or nursing staff despite his obvious injuries. *Id* at 67. Plaintiff alleges he filed a grievance but, having received no response, wrote to Defendant Commissioner Carney to follow up on the same. *Id* at ¶¶ 68-69. Defendant Carney replied to Plaintiff's letter that no grievance was in the system and that she would refer his allegations for investigation. *Id* at ¶ 70.

Plaintiff's Amended Complaint alleges that the Philadelphia Department of Prisons ("PDP") has, "[f]or years . . . displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision." *Id.* at ¶ 72. The Amended Complaint contains allegations that there were staffing shortages at the facilities of the PDP, and that certain officials acknowledged these shortages. *See id.* ¶¶ 73-96. Yet, as explained further below, the Amended Complaint does not allege a deliberate course of conduct on the part of the City that resulted in understaffing at PDP facilities, or the taking of actions that would inevitably result in inadequate staffing, such that there is a plausible claim that the Moving Defendants were deliberately indifferent. *See id.*

Plaintiff brings the following claims under 42 U.S.C. § 1983 against Moving Defendants: a failure-to-intervene claim in violation of the Fourteenth Amendment against all individual

defendants (Count I); a municipal liability claim against the City of Philadelphia (Count II); and a denial of reasonable request for medical care claim in violation of the Fourteenth Amendment against all individual defendants (Count III). Moving Defendants now move to dismiss Plaintiff's claims against them in their entirety.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

## III.    ARGUMENT

Plaintiff brings three claims in his Amended Complaint against Moving Defendants under 42 U.S.C. § 1983: a failure-to-intervene claim in violation of the Fourteenth Amendment against all individual defendants (Count I); a municipal liability claim against the City of Philadelphia (Count II); and a denial of reasonable request for medical care claim in violation of the Fourteenth Amendment against all individual defendants (Count III). Moving Defendants now move to dismiss Plaintiff's claims against them in their entirety for failure to state a claim. Defnedants address each claim as follows.

### A. Counts I and III Should be Dismissed Because There are No Allegations of Personal Involvement by the Individual Defendants as Required to State a Claim Against Them.

Plaintiff's Amended Complaint does not allege that any of the Individual Answering

Defendants, Warden Michele Farrell, Warden Nancy Giannetta, or Prison Commissioner Blanche Carney, were personally involved in, or aware of, the specific risk that Plaintiff would be attacked or that he was or would be subjected to a delay in medical treatment. A municipal official sued in his or her individual capacity, such as Warden Farrell, Warden Giannetta, and Commissioner Carney here, cannot be held vicariously liable for the constitutional violations of the employees that the official supervises. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, to the extent that Count I of Plaintiff's Amended Complaint seeks to hold Defendants Farrell, Giannetta, and Carney vicariously liable for the constitutional violations of other officials—such as John Doe Officers—the claim fails on its face. To the extent that Plaintiff seeks to hold them liable as policymakers for the City, the claim fails for the same reason as the municipal liability claim (Count II) against the City under *Monell*, which reason is discussed below.

On the other hand, if Plaintiff seeks to hold the individual Answering Defendants liable in their official capacity by way of Counts I and III, such claims are duplicative of the municipal liability claim against the City under *Monell* (Count II) and should be dismissed for the same reasons discussed below. This District has consistently determined that a claim against a municipal employee in their official capacity is the same as suing the municipal agency. *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) ("Official capacity suits, however, are just another way of pleading an action against an entity of which an officer is an agent.")

Accordingly, Counts I and II should be dismissed against Answering Defendants, Warden

Michele Farrell, Warden Nancy Giannetta, and Prison Commissioner Blanche Carney in both their individual and official capacities because of the pleading deficiencies in Plaintiff's Amended Complaint.

### B. Count II Should be Dismissed Because Plaintiff's Complaint Fails to Allege a Cognizable Claim of Municipal Liability Against the Moving Defendants Under 42 U.S.C. § 1983.

Plaintiff's Amended Complaint lacks nonconclusory allegations plausibly supporting the conclusion that, in February 2021, the City had any of 1) "a failure to train jail employees to respond to emergencies"; 2) a custom of *deliberately* choosing to hire fewer prison guards that were required or had a policy or custom of or otherwise were *deliberately indifferent* to the staffing needs of PDP facilities such as to support a plausible municipal liability or supervisory liability claim under § 1983; or 3) a policy or custom of delaying assistance for emergency situations.

A municipality, such as the City, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("*Monell*"). Rather, "it is when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("Section 1983 does not permit a municipality to be held vicariously liable for the acts of its employees"). To survive the pleading stage in a § 1983 claim against the City, a plaintiff must allege that (1) a constitutionally-protected right has been violated and (2) the alleged violation resulted from a municipal policy or custom that exhibits deliberate indifference to rights of citizens. *Monell*, 436 U.S. at 694–95.

In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland*, 706 F.3d at 237 (citations and quotations omitted). A policy occurs when

a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *See id.* (citations and quotations omitted). A complaint must include "specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). And to bring a § 1983 municipal liability claim under *Monell*, Plaintiff must present evidence that a "policy or custom of [the City of Philadelphia] was the 'moving force' behind a violation of his [constitutional] rights." *Clark v. Regional Medical First Correctional*, 360 F. App'x 268, 269 (3d Cir. 2010).

Here, even assuming that the Amended Complaint sufficiently pleads a failure-to-protect claim on the part of the individual John Doe Corrections Officers, the Amended Complaint fails to allege facts to support a plausible inference that Plaintiff's injury was the result of a specific custom on the part of Warden Farrell, Warden Giannetta, Commissioner Carney, or the City. to understaff PDP facilities.

### 1. Plaintiff Fails to Sufficiently Plead A Failure to Train Claim

Plaintiff alleges in conclusory fashion that the City engaged in "official and/or unofficial policies, practices, or customs, of failing to train employees to respond to emergencies[.]" Am. Compl. ¶ 146. Plaintiff's failure to train claim is deficiently plead because there are no facts in the Amended Complaint regarding any attempts to identify whether the City trains its employees to respond to emergencies. Instead, Plaintiff merely concludes that the City fails to do so, without indicating any facts that give rise to such an assumption, such as a review of prison policies or an attempt to learn about the trainings offered or required for prison employees.

8

As such, the Amended Complaint is insufficient because it "lacks any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom" and that it "fails to specifically demonstrate how the training programs for the police officers [were] inadequate." *Torres*, 2008 WL 2600314, at *5 (finding dismissal appropriate where the plaintiff's complaint alleged that Allentown "did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct, and that this policy/custom exhibited deliberate indifference to her constitutional rights.").

While Plaintiff's Amended Complaints includes sections referencing the *Remick* litigation and reports (¶¶ 98-117), statements from incarcerated individuals (¶¶ 118-127) and induvial cases of death and/or violence, Plaintiff fails to include any facts about courses of training or to connect any of these sections to a failure to train by the City. As a result, these pleading deficiencies necessitate dismissal of Plaintiff's failure to train theory of municipal liability.

### 2. Plaintiff Fails to Plead Sufficient Facts to Substantiate His Theory that Prison Understaffing Was the Result of a Municipal Policy or Custom.

Plaintiff alleges that the City engaged in "official and/or unofficial policies, practices, or customs, of … inadequately staffing the jail[.]" Am. Compl. ¶ 146. But in support of this bald conclusion, Plaintiff alleges no specific statements or other actions on the part of City policymakers that would even plausibly suggest that a decision was made to understaff or that decisionmakers were deliberately indifferent.

On the contrary, while Plaintiff cites a report from a court-appointed monitor overseeing a settlement agreement in a separate litigation involving the PDP, *see id.* ¶ 185 & n.24 (citing *Remick v. City of Phila.*, 20-cv-1959, Dkt. No. 93 at 1), that report, in fact, undermines Plaintiff's conclusion as it details the City's efforts to fill staffing vacancies within PDP, and explains that these vacancies were created by the extraordinary circumstances surrounding the COVID-19

pandemic, *not* by any deliberate decision on the part of the City not to fill such positions. Indeed, the November 4, 2022 report cited in the Amended Complaint, which is attached in relevant part hereto as Exhibit A,[2] states as follows:

- "PDP data suggests that *voluntary resignations* are among the largest contributing factors to the current vacancy rate." *Remick* Report, Ex. A, at p. 8 (emphasis added).

- "The PDP has been hiring sworn staff and *its efforts are commendable given existing recruitment barriers*." *Id.* (emphasis added).

- "The Monitoring Team has not analyzed data prior to FY 19/20, nor has it formed an opinion on the effectiveness of PDP's vacancy projection methodology. *It is certain, however, that the COVID-19 pandemic presented or exacerbated challenges in ways that were unpredictable to Defendants and unprecedented for PDP*." *Id.* at p. 9 (emphasis added).

These statements (and others) from the report belie Plaintiff's conclusory allegation that the City "failed take the necessary steps to rectify the failures and adequately protect the constitutional rights of the inmates in their custody and control." Am. Compl. ¶ 145.

At most, Plaintiff's nonconclusory allegations support the conclusion that the City *could* have done more (or taken different actions) to fill vacancies.  However that, at best, supports a claim for *negligence*, not *deliberate indifference* as is required to support a constitutional claim under § 1983. *See, e.g.*, *Hunter v. Shouppe*, No. CIV.A. 07-74, 2007 WL 712207, at *3 (W.D. Pa. Jan. 25, 2007); *R&R adopted* 2007 WL 735487 (W.D. Pa. Mar. 7, 2007) (holding that plaintiff failed to state a claim where he did not "make any allegation that the warden was aware, or should have been aware, of any special need to provide Plaintiff with segregated housing," and explaining

---

[2] Because Plaintiff cites this report in his Amended Complaint, and explicitly relies on it in an attempt to establish a plausible § 1983 claim premised on an understaffing theory, this Court can consider the entire report—and not just those statements from the report quoted in the Amended Complaint—in deciding this motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (holding that a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment" (internal quotation marks and emphasis omitted)).

that plaintiff's complaint "[a]t most . . . may demonstrate an unintentional failure to anticipate violence," which "sounds, if anything, in negligence, which is not actionable under 42 U.S.C. § 1983.");

The Honorable Eduard C. Robreno recently considered a markedly similar complaint in *Diaz v. City of Philadelphia.* No. Civ.A. 22-3286, 2022 WL 16553385, at *5. In that case, the decedent's estate sued the City under the same theory of municipal liability: a policy or custom of understaffing. In determining that the allegations of a policy understaffing were insufficient to substantiate a municipal liability claim, Judge Robreno held: "Mere knowledge of difficulties hiring and retaining employees is not the same as a policy to routinely hire fewer Correctional Officers than are needed to maintain safe premises." Similarly, Judge Robreno determined that the allegation of a custom of understaffing could also not support a claim for municipal liability:

> Plaintiffs have not alleged that the failure to hire was a <u>course of conduct</u>. Plaintiffs have alleged that the City has taken some measures that might make the occupation less desirable. But Plaintiffs have alleged no facts that indicate that there was a particular course of conduct in which, for instance, the hiring body for the Philadelphia Department of Prisons chose to hire fewer prison guards than were required.

*Id* (underlining in original, italics added) (citations omitted).

Just as in *Diaz*, Plaintiff's Amended Complaint does not allege a policy or custom of understaffing upon to state and claim against the City. As a result, the municipal liability claim premised upon a policy or custom of understaffing should be dismissed.

### 3. Plaintiff Fails to Plead A Policy or Custom of Delayed Assistance for Emergency Situations

Plaintiff alleges in conclusory fashion that the City engaged in "official and/or unofficial policies, practices, or customs, of … delaying assistance for emergency situations" Am. Compl. ¶ 146. While Plaintiff's Amended Complaints includes a section that includes tragic, individual instances of death and/or abuse of inmates within the Philadelphia Department of Prisons, Plaintiff

fails to include any facts that demonstrate them to be the result of either a policy or custom by the City. In fact, many of these narratives lack enough information for the reader to determine whether a City employee would have been able to prevent their occurrence, much less whether a municipal policy or custom was the moving force behind their injuries.

While these narratives are understandably emotionally compelling, they do not legally support Plaintiff's theory of a policy or custom because they neither identify an offensive policy nor demonstrate a "course of conduct so well-settled and permanent as to virtually constitute law." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). As a result, Plaintiff has failed to adequately plead a policy or custom of delayed assistance for emergency situations and Answering Defendants respectfully request that the Court dismiss this claim.

### IV.  **CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiff's claims against Defendants City of Philadelphia, Warden Farrell, Warden Giannetta, and Commissioner Carney for failure to state a claim.

February 3, 2023                                    Respectfully submitted,

                                        /s/ Kathryn Faris
                                        Kathryn Faris
                                        Deputy City Solicitor
                                        Pa. Attorney ID No. 318580
                                        City of Philadelphia Law Department
                                        1515 Arch Street, 14th Floor
                                        Philadelphia, PA 19102
                                        215-683-5445 (Phone)
                                        215-683-5397 (Fax)
                                        Kathryn.faris@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH SIMMONS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | No. 22-1644 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Motion to Dismiss Plaintiff's

Amended Complaint, brought by Defendants City of Philadelphia, Warden Farrell, Warden

Giannetta, and Commissioner Carney was filed via the Court's electronic filing system and is

available for viewing and downloading.

/s/ Kathryn Faris
Kathryn Faris
Deputy City Solicitor
Pa. Attorney ID No. 318580
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5445 (Phone)
215-683-5397 (Fax)
Kathryn.faris@phila.gov

Date: February 3, 2023