# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH SIMMONS,** : | |
| : | |
| **Plaintiff,** : | |
| : | Civil Action |
| v. : | No. 22-1644 |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| : | |
| **Defendants.** : | |

## ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of the Motion to Dismiss Plaintiff's Third Amended Complaint, brought by the City of Philadelphia, Warden Michele Farrell, and Prison Commissioner Blanche Carney, it is **HEREBY ORDERED** that the Motion is **GRANTED.** The Third Amended Complaint is **DISMISSED WITH PREJUDICE.**

BY THE COURT:

_____
JOHN M. GALLAGHER, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH SIMMONS,** | : |
| **Plaintiff,** | : |
| v. | : Civil Action<br>: No. 22-1644 |
| **CITY OF PHILADELPHIA, et al.,** | : |
| **Defendants.** | : |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendants City of Philadelphia, Warden Michele Farrell, and Prison Commissioner Blanche Carney ("Moving Defendants"), by and through the undersigned counsel, hereby file this Motion to Dismiss Plaintiff's Third Amended Complaint for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, Moving Defendants incorporate the attached Memorandum of Law. Moving Defendants respectfully request that this Court dismiss the claims asserted against them, with prejudice.

April 4, 2023                                               Respectfully submitted,

/s/ Kathryn Faris
Kathryn Faris
Deputy City Solicitor
Pa. Attorney ID No. 318580
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5445 (Phone)
215-683-5397 (Fax)
Kathryn.faris@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH SIMMONS, | : |
| Plaintiff, | : |
| v. | : Civil Action<br>: No. 22-1644 |
| CITY OF PHILADELPHIA, et al., | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

The allegations in Plaintiff's Third Amended Complaint arise from injuries sustained during a tragic sexual assault suffered by the Plaintiff, Joseph Simmons, by his cellmate at the Curran-Fromhold Correctional Center (hereinafter "CFCF). As alleged in the Third Amended Complaint, Plaintiff was incarcerated at CFCF when, on or about February 22, 2021, he was brutally attacked by his cellmate, who was exhibiting symptoms of decompensating mental health. *See gen.* 3d. Am. Compl. ECF 36. Plaintiff brings suit against the City of Philadelphia (the "City"), Warden Michele Farrell, and Prison Commissioner Blanche Carney (collectively, "Answering Defendants") for alleged violations of his constitutional rights. Defendants now move to dismiss each of the claims against them.

I. **ALLEGATIONS IN THE AMENDED COMPLAINT**

Plaintiff's Third Amended Complaint arises from an inmate-on-inmate assault that occurred in CFCF on or about February 22, 2021. 3d. Am. Compl. ¶ 39. Plaintiff alleges that he was originally housed with his assailant cellmate in October 2020 after Plaintiff was placed in administrative segregation following discipline for use of abusive language. *Id* at ¶¶ 22-23.

Plaintiff alleges his cellmate had a reputation amongst prisoners and staff for unpredictable mood swings and violent tendencies. *Id* at 26. Between October and November of 2020, Plaintiff alleges that he suffered multiple physical assaults by his cellmate but did not report them immediately. *Id* at ¶¶ 29-30. Plaintiff claims that at some point in December 2020 he reported to an unnamed correctional officer that he was fearful for his safety with his cellmate. *Id* at 31. Plaintiff alleges that despite his concerns, he was still housed with the same cellmate in February 2021. *Id* at 32.

Plaintiff alleges that on February 19, 2021, his cellmate began accusing Plaintiff of reading his mail, touching his belongings, and plotting to harm him. *Id* at 34. The cellmate began threatening Plaintiff with physical violence and those threats increased over time. *Id* at 39. Plaintiff alleges that he reported this behavior to unnamed correctional officers for several days and asked to be moved for fear of being assaulted. *Id* at 38. Plaintiff's concerns peaked on February 22, 2021 when he pressed his cell's emergency call button at 10:00 pm and told Corrections Officer Wilson that he feared for his life and was in imminent danger. *Id* at ¶ 39.

According to the Third Amended Complaint, Officer Wilson was the only staff member on duty in the unit on February 22, 2021 during the evening hours. *Id* at ¶ 40. Plaintiff alleges that, despite his reports, Officer Wilson did nothing to assist Plaintiff but stated he would log the concerns and advise his sergeant and lieutenant of the same. *Id* at ¶ 41. Plaintiff then alleges that Officer Wilson left the unit and that no other correctional officer came to relieve him. *Id* at ¶ 42.

Plaintiff alleges that throughout the night, no correctional staff was on duty in the unit, thus allowing Plaintiff to be victimized by his cellmate for several hours without intervention. *Id* at ¶¶ 43-59. As a result of the attack, Plaintiff suffered a chipped tooth, a human bite mark to his face, a sprained wrist, and swollen genitals. *Id* at ¶ 62. Plaintiff alleges that the next morning, when a corrections officer interacted with Plaintiff and his cellmate, Plaintiff did not report the attack out

of fear for his safety. *Id.* Later that day, Plaintiff allegedly reported the attack to unnamed correctional staff and requested medical attention from the same. *Id* at ¶ 63.

Plaintiff alleges he filed a grievance but, having received no response, wrote to Defendant Commissioner Carney to follow up on the same. *Id* at ¶¶ 64-65. Defendant Carney replied to Plaintiff's letter that no grievance was in the system and that she would refer his allegations for investigation. *Id* at ¶ 66.

Plaintiff's Third Amended Complaint alleges that the Philadelphia Department of Prisons ("PDP") has, "[f]or years . . . displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision." *Id.* at ¶ 68. The Third Amended Complaint contains allegations that there were staffing shortages at the facilities of the PDP, and that certain officials acknowledged these shortages. *See id.* ¶¶ 68-93. Yet, as explained further below, the Amended Complaint does not allege a deliberate course of conduct on the part of the City that resulted in understaffing at PDP facilities, or the taking of actions that would inevitably result in inadequate staffing, such that there is a plausible claim that the Moving Defendants were deliberately indifferent. *See id*.

Plaintiff brings the following claims under 42 U.S.C. § 1983 against Moving Defendants: a failure-to-intervene claim in violation of the Fourteenth Amendment against all individual defendants (Count I); and a municipal liability claim against the City of Philadelphia (Count II). Moving Defendants now request dismissal of Plaintiff's claims against them in their entirety.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

4

Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

### III. ARGUMENT

Plaintiff brings two claims in his Third Amended Complaint against Moving Defendants under 42 U.S.C. § 1983: a failure-to-intervene claim in violation of the Fourteenth Amendment against all individual defendants (Count I); and a municipal liability claim against the City of Philadelphia and Answering Defendants in their official capacities (Count II). Moving Defendants now move to dismiss Plaintiff's claims against them in their entirety for failure to state a claim. Defendants address each claim as follows.

**A. Count I Should be Dismissed Against Defendant Carney Because There are No Allegations of that She had Personal Involvement as Required to State a Claim Against Her.**

Plaintiff's Third Amended Complaint does not allege that Defendant, Prison Commissioner Blanche Carney, was personally involved in or was aware of the specific risk that Plaintiff would be attacked. A municipal official sued in his or her individual capacity, such as Commissioner Carney, cannot be held vicariously liable for the constitutional violations of the employees that the official supervises. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, to the extent that Count I of Plaintiff's Third Amended Complaint seeks to hold Defendant Carney vicariously liable for the constitutional violations of other officials—such

5

as the newly named corrections officers and staff—the claim fails on its face. To the extent that Plaintiff seeks to hold her liable as policymakers for the City, the claim fails for the same reason as the municipal liability claim (Count II) against the City under *Monell*, which reason is discussed below.

Count I should be dismissed against Defendant Prison Commissioner Blanche Carney in her individual capacity because of the pleading deficiencies in Plaintiff's Third Amended Complaint.

### B. Count II Should be Dismissed Because Plaintiff's Complaint Fails to Allege a Cognizable Claim of Municipal Liability Against the Moving Defendants Under 42 U.S.C. § 1983.

Plaintiff's Third Amended Complaint lacks nonconclusory allegations plausibly supporting the conclusion that, in February 2021, the City had any of 1) "a failure to train jail employees to respond to emergencies"; 2) a custom of *deliberately* choosing to hire fewer prison guards that were required or had a policy or custom of or otherwise were *deliberately indifferent* to the staffing needs of PDP facilities such as to support a plausible municipal liability or supervisory liability claim under § 1983; or 3) a policy or custom of delaying assistance for emergency situations. 3d. Am. Compl. at ¶ 73.

A municipality, such as the City, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("*Monell*"). Rather, "it is when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("Section 1983 does not permit a municipality to be held vicariously liable for the acts of its employees"). To survive the pleading stage in a § 1983 claim against the City, a plaintiff must allege that (1) a constitutionally-protected right has

been violated and (2) the alleged violation resulted from a municipal policy or custom that exhibits deliberate indifference to rights of citizens. *Monell*, 436 U.S. at 694–95.

In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland*, 706 F.3d at 237 (citations and quotations omitted). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *See id.* (citations and quotations omitted). A complaint must include "specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." *See Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). And to bring a § 1983 municipal liability claim under *Monell*, Plaintiff must present evidence that a "policy or custom of [the City of Philadelphia] was the 'moving force' behind a violation of his [constitutional] rights." *Clark v. Regional Medical First Correctional*, 360 F. App'x 268, 269 (3d Cir. 2010).

Here, the Third Amended Complaint fails to allege facts to support a plausible inference that Plaintiff's injury was the result of a specific custom on the part of Warden Farrell, Commissioner Carney, or the City to understaff PDP facilities.

### 1. Plaintiff Fails to Sufficiently Plead A Failure to Train Claim

Plaintiff alleges in conclusory fashion that the City engaged in "official and/or unofficial policies, practices, or customs, of failing to train employees to respond to emergencies[.]" 3d. Am. Compl. ¶ 73. Plaintiff's failure to train claim is deficiently plead because there are no facts in the Amended Complaint regarding any attempts to identify whether the City trains its employees to respond to emergencies. Instead, Plaintiff merely concludes that the City fails to do so, without

7

indicating any facts that give rise to such an assumption, such as a review of prison policies or an attempt to learn about the trainings offered or required for prison employees.

As such, the Third Amended Complaint is insufficient because it "lacks any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom" and that it "fails to specifically demonstrate how the training programs for the police officers [were] inadequate." *Torres*, 2008 WL 2600314, at *5 (finding dismissal appropriate where the plaintiff's complaint alleged that Allentown "did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct, and that this policy/custom exhibited deliberate indifference to her constitutional rights.").

While Plaintiff's Third Amended Complaint includes sections referencing the *Remick* litigation and reports (¶ ¶ 94-113), statements from incarcerated individuals (¶ ¶ 114-123) and individual cases of death and/or violence(¶¶ 124-156), Plaintiff fails to include any facts about courses of training or to connect any of these sections to a failure to train by the City. As a result, these pleading deficiencies necessitate dismissal of Plaintiff's failure to train theory of municipal liability.

### 2. Plaintiff Fails to Plead Sufficient Facts to Substantiate His Theory that Prison Understaffing Was the Result of a Municipal Policy or Custom.

Plaintiff alleges that the City engaged in "official and/or unofficial policies, practices, or customs, of … inadequately staffing the jail[.]" 3d. Am. Compl. at ¶ 173. But in support of this bald conclusion, Plaintiff alleges no specific statements or other actions on the part of City policymakers that would even plausibly suggest that a decision was made to understaff or that decisionmakers were deliberately indifferent.

8

Plaintiff makes one allegation that former Commissioner Leon King implemented an overtime policy that lead to attrition but fails to connect that policy to the alleged injuries suffered by Plaintiff. *Id* at ¶ 72. Instead, Plaintiff avers in a conclusory fashion that the overtime policy "lead to an increase of violence in the jails and deprivation of inmates' rights, as well as federal litigation to resolve the issue." *Id* at ¶ 73. Plaintiff's allegation is that this identified policy was resolved through federal litigation, which belies any relevance it may have to the current claim. *Id.* Plaintiff fails to show how the named decisionmakers during the times relevant to his Third Amended Complaint made decisions to understaff or were deliberately indifferent to the understaffing issues.

On the contrary, while Plaintiff cites a report from a court-appointed monitor overseeing a settlement agreement in a separate litigation involving the PDP, *see id.* ¶¶ 94-99, n.16, n. 17. (citing *Remick v. City of Phila.*, 20-cv-1959, Dkt. No. 181 at 8-9), that report, in fact, undermines Plaintiff's conclusion as it details the City's efforts to fill staffing vacancies within PDP, and explains that these vacancies were created by the extraordinary circumstances surrounding the COVID-19 pandemic, *not* by any policy or deliberate decision on the part of the City not to fill such positions. Indeed, the November 4, 2022 report cited in the Amended Complaint, which is attached in relevant part hereto as Exhibit A,[1] states as follows:

- "PDP data suggests that *voluntary resignations* are among the largest contributing factors to the current vacancy rate." *Remick* Report, Ex. A, at p. 8 (emphasis added).

---

[1] Because Plaintiff cites this report in his Amended Complaint, and explicitly relies on it in an attempt to establish a plausible § 1983 claim premised on an understaffing theory, this Court can consider the entire report—and not just those statements from the report quoted in the Amended Complaint—in deciding this motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (holding that a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment" (internal quotation marks and emphasis omitted)).

- "The PDP has been hiring sworn staff and *its efforts are commendable given existing recruitment barriers*." *Id.* (emphasis added).

- "The Monitoring Team has not analyzed data prior to FY 19/20, nor has it formed an opinion on the effectiveness of PDP's vacancy projection methodology. *It is certain, however, that the COVID-19 pandemic presented or exacerbated challenges in ways that were unpredictable to Defendants and unprecedented for PDP.*" *Id.* at p. 9 (emphasis added).

These statements (and others) from the report belie Plaintiff's conclusory allegation that the City "failed take the necessary steps to rectify the failures and adequately protect the constitutional rights of the inmates in their custody and control." 3d. Am. Compl. at ¶ 172.

At most, Plaintiff's nonconclusory allegations support the conclusion that the City *could* have done more (or taken different actions) to fill vacancies. However that, at best, supports a claim for *negligence*, not *deliberate indifference* as is required to support a constitutional claim under § 1983. *See, e.g.*, *Hunter v. Shouppe*, No. CIV.A. 07-74, 2007 WL 712207, at *3 (W.D. Pa. Jan. 25, 2007); *R&R adopted* 2007 WL 735487 (W.D. Pa. Mar. 7, 2007) (holding that plaintiff failed to state a claim where he did not "make any allegation that the warden was aware, or should have been aware, of any special need to provide Plaintiff with segregated housing," and explaining that plaintiff's complaint "[a]t most . . . may demonstrate an unintentional failure to anticipate violence," which "sounds, if anything, in negligence, which is not actionable under 42 U.S.C. § 1983.").

The Honorable Eduard C. Robreno recently considered a markedly similar complaint in *Diaz v. City of Philadelphia.* No. Civ.A. 22-3286, 2022 WL 16553385, at *5.[2] In that case, the decedent's estate sued the City under the same theory of municipal liability: a policy or custom of understaffing. In determining that the allegations of a policy understaffing were insufficient to

---

[2] Defendants note that the *Diaz* plaintiff has since amended their complaint and defendants subsequently moved to dismiss. The application of the Court's decision to dismiss the *Diaz* complaint is timely as of the filing of the instant motion.

substantiate a municipal liability claim, Judge Robreno held: "Mere knowledge of difficulties hiring and retaining employees is not the same as a policy to routinely hire fewer Correctional Officers than are needed to maintain safe premises." Similarly, Judge Robreno determined that the allegation of a custom of understaffing could also not support a claim for municipal liability:

> Plaintiffs have not alleged that the failure to hire was a <u>course of conduct</u>. Plaintiffs have alleged that the City has taken some measures that might make the occupation less desirable. But Plaintiffs have alleged no facts that indicate that there was a particular course of conduct in which, for instance, the hiring body for the Philadelphia Department of Prisons chose to hire fewer prison guards than were required.

*Id* (underlining in original, italics added) (citations omitted).

Just as in *Diaz*, Plaintiff's Third Amended Complaint does not allege a policy or custom of understaffing upon which to state a claim against the City. As a result, the municipal liability claim premised upon a policy or custom of understaffing should be dismissed.

### IV. CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiff's claims against Defendants City of Philadelphia, Warden Farrell, and Commissioner Carney for failure to state a claim.

April 4, 2023                                    Respectfully submitted,

/s/ Kathryn Faris
Kathryn Faris
Deputy City Solicitor
Pa. Attorney ID No. 318580
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5445 (Phone)
215-683-5397 (Fax)
Kathryn.faris@phila.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH SIMMONS, | : |
| **Plaintiff,** | : |
| v. | : Civil Action<br>: No. 22-1644 |
| CITY OF PHILADELPHIA, et al., | : |
| **Defendants.** | : |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Motion to Dismiss Plaintiff's Amended Complaint, brought by Defendants City of Philadelphia, Warden Farrell, and Commissioner Carney was filed via the Court's electronic filing system and is available for viewing and downloading.

/s/ Kathryn Faris
Kathryn Faris
Deputy City Solicitor
Pa. Attorney ID No. 318580
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5445 (Phone)
215-683-5397 (Fax)
Kathryn.faris@phila.gov

Date: April 4, 2023