**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH SIMMONS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-1644** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**Reply to Defendants' Response to Plaintiff's Motion for Leave to Amend**

### I.       Introduction

Plaintiff Joseph Simmons, by and through his undersigned counsel, replies in brief to Defendants' arguments against the Court granting Plaintiff Leave to Amend. Mr. Simmons seeks amendment to support existing claims against existing parties by providing additional context aided by a recently docketed opinion. Defendants are not unduly prejudiced by this amendment; rather, the interests of justice are furthered by permitting Mr. Simmons' proposed amendment. In the end, Mr. Simmons' amendment is not futile or prejudicial. Therefore, leave to amend should be granted.

### II.       Argument

Denial of leave to amend is disfavored; a Court should grant leave absent a substantial reason to deny. Moore's Federal Practice, 3 ed., vol. 3, 15.14(1); *see also Shane v. Fauver*, 213 F.3d 113, 115-117 (3d Cir. 2000). Responding Defendants argue that further amendment of Mr. Simmons' complaint is unjust.  Defendants provide three bases for this contention: 1) that further

amendment would be futile; 2) that further amendment would result in undue delay; and 3) that

further amendment is prejudicial to the Defendants.  But, further amendment of the complaint is

not futile; Mr. Simmons' complaint satisfies the liberal pleading standards of the Federal Rules

of Civil Procedure. Further amendment has also not caused undue delay as contemplated by the

Third Circuit in *Fraser v. Nationwide Mut. Ins. Co.*, 232 F.3d, 119 (3rd Cir. 2003) or *Long v.

Wilson*, 393 F.3d. 390, 400 (3d. Cir. 2004). And, an amendment is not prejudicial because it

requires a party to invest additional resources in litigation prior to the initiation of discovery.

### A.  Plaintiff's amendments are not futile and adequately plead claims against moving Defendants.

This matter remains in the pleadings stage, and the Court has not yet ruled on the adequacy

of Mr. Simmons' amended complaints. Mr. Simmons's amendments have been formulated to

advance the factual narrative, add recently identified parties, and clarify claims. The instant

amendments incorporate recently Rule 11-verified and docketed representations from two

concurrent litigations in the Eastern District. *Sholonda Gregory v. City of Philadelphia*, No.

2:22-cv-00929-BMS (E.D. Pa. Nov. 3, 2022); *Remick v. City of Philadelphia*, No. 2-20-cv-1959-

BMS (E.D. Pa. Mar. 3, 2023). These concurrent litigations similarly challenge the conduct of the

Philadelphia Department of Prisons (PDP) and City of Philadelphia official policymakers and

provide additional support for the adequacy of Mr. Simmons' pleadings.  The amendments also

provide additional allegations regarding Defendants' failure to train, supervise, and discipline

employees.

Defendants argue without citation to authority that the amendment to include information

from the Gregory lawsuit would be futile because it indicates a "decision to divert resources to

address multiple areas of constitutional import." Def. Resp. at 6, Docket No. 50. However, Mr.

Simmons' amendments drawn from the Gregory lawsuit undercut Defendants' assertion that

"Plaintiff alleges no specific statements or other actions on the part of City policymakers that would…suggest that a decision was made to understaff or that decisionmakers were deliberately indifferent." Def. Mtn. at 8.

Plaintiffs' proposed amendments also respond to the recent ruling of the Diaz court. *Diaz v. City of Philadelphia*, No. 22-cv-3286, ---F. Supp. 3d ---, 2023 WL. 3011340 (E.D. Pa. Apr 20, 2023). The *Diaz* opinion, a ruling on a 12(b)(6) Motion to Dismiss, was docketed *after* parties had an opportunity to meet and confer on Defendants' most recent motion to dismiss. Docket No. 43 (4/04/2023). Mr. Simmons' proposed amendments distinguish his case from that of *Diaz* and provide support for the plausibility of the claims against moving defendants.

Mr. Simmons' amended facts alleging an official custom or practice is distinguishable from the controlling facts in *Diaz*. The *Diaz* opinion relies on the timing and location of Mr. Diaz's death compared to the other four homicides at PDP institutions to find that understaffing was not the "moving force behind the resulting injury." *Id*. Unlike Mr. Diaz, who was murdered in August 2020 at the PDP Detention Center, Mr. Simmons was assaulted in February 2021 in Curran-Fromhold Correctional Facility following a string of brutal assaults and other emergencies that occurred in the same facility and all caused by prison understaffing.  Plaintiff's Proposed Amended Complaint ¶¶ 137, 147-150, 166, 170-172.

Mr. Simmons' amended allegations also provide sufficient facts to connect his assault to other incidents establishing that the custom of understaffing was a legal cause of his injury. Mr. Simmons alleges that PDP staffing policies further contributed reduction in staffing levels, *Id*. ¶¶ 86-93, that the City was on notice of low staffing levels prior to 2019, *Id*. ¶¶ 74-76, 89, that before his assault the City was aware that its staffing level of COs was causing a constitutional

deprivation of incarcerated persons, *Id.* ¶¶ 116-118, and that prior to Mr. Simmons' assault the City failed to take reasonable measures to achieve proper staffing levels. *Id.* ¶¶ 124-127.

Mr. Simmons' amendment further supports his failure to train, discipline, and supervise theories of *Monell* liability. Responding Defendants' do not address those details in their futility argument. Defs. Resp. Docket No. 50. Nonetheless, Mr. Simmons' failure to train allegations are sufficiently pled to establish that policymakers' failures to train, supervise, and discipline their officers led to Officer Wilson's decision to leave his post without responding to the obvious emergency at hand.

**B. Plaintiff's amendments do not cause undue delay by the standards adopted by the Third Circuit Court of Appeals.**

The Third Circuit endorsed an approach for evaluating delay by asking if the proposed amendments 1) require significant additional resources to *conduct discovery or prepare for trial*; 2) significantly delay the resolution of the dispute; or 3) prevent the plaintiff from brining a timely action in another jurisdiction. *Long*, 393 F.3d at 400 (emphasis added). None of these factors apply here as Mr. Simmons' matter remains in the pleading stage. Additional amendment has the potential to focus the issues and disputes before the Court and hasten resolution. The concerns highlighted in *Fraser v. Nationwide Mut. Ins. Co.* do not support the Court's denial of leave to amend because granting leave would not prejudice Defendants' presentation of their case. 352 F.3d 107 116 (3d Cir. 2003) (Finding undue delay because a party sought leave to amend days prior to defendant's deadline for filing a motion for summary judgment thereby prejudicing the defense.).

Another touchstone for courts evaluating of undue delay is the party's motives for not amending earlier. *Synthes, Inc. v. Marotta*, 2012 WL 748758 (E.D. Pa. Mar. 6, 2012). Mr. Simmons became aware of Sholonda Gregory's detailed claims on Defendants' role in

understaffing the facilities after she filed her complaint. Ms. Gregory's complaint provides

allegations not included in her public letter. Attached as "**Exhibit A.**" Ms. Gregory's complaint

alleges that PDP officials and policymakers were aware of and *caused* the low staffing levels at

the Philadelphia Department of Prisons beginning in at least 2016, well before the start of the

COVID-19 pandemic. *Sholonda Gregory v. City of Philadelphia*, No. 2:22-cv-00929-BMS (E.D.

Pa. Nov. 3, 2022) Docket No. 17. Mr. Simmons gains no improper strategic advantage by

seeking amendment at this stage.

### C.  Plaintiff's amendments do not prejudice Responding Defendant's substantially enough to overcome the liberal standard for granting leave to amend.

While it is true that Mr. Simmons has amended his complaint three times and now seeks

leave for a fourth, his complaint and its initial amendment were filed without benefit of counsel.

Since that time, responding Defendants have consented to amendment on two prior occasions.

Docket Nos. 23, 35.  One of the amendments substituted John Does for correctional employees

once their identity became known to Mr. Simmons.  Docket Nos. 35, 37.

Responding Defendants argue that Mr. Simmons' amendment prejudices them because they

have "already expended significant resources" in the litigation of this matter. This argument is

unavailing and elides the proper focus of the prejudice analysis in the leave to amend context.

Prejudice in terms of leave to amend has been described as "undue difficulty in defending a

lawsuit as a result of a change in tactics or theories on the part of the other party" that "would

result in additional discovery, cost and preparation to defend against new facts or theories."

*Heraeus Med. GmbH v. Esschem, Inc.*, Civil Action No. 14-5169; 321 F.R.D. 215, 217-218; 2017

U.S. Dist. LEXIS 86365 **4 (E.D. of Pa June 6, 2017) (internal citations omitted). By this

standard, Defendants are not prejudiced by amendment leading to further motion practice during

the pleading stage.

Finally, Defendants' asserted prejudice is further belied by their additional supplemental briefing concerning the *Diaz* matter. Because the opinion was docketed after parties most recently met and conferred, justice demands that Mr. Simmons be given an opportunity to address the reasoning of the opinion.  Docket No. 46.

### III.    Conclusion

For the foregoing reasons Plaintiff's Motion for Leave to Amend should be granted as to do so is in the interest of justice.

Respectfully submitted,

**MCELDREW PURTELL**                          **ABOLITIONIST LAW CENTER**

/S/ Colin S. Haviland____                           /S/ Nia O. Holston_____
Colin S. Haviland, Esq.                                Nia O. Holston, Esq.
John J. Coyle, Esq.                                     Bret D. Grote, Esq.
123 South Broad Street                               PO Box 8654
Suite 2250                                                 Pittsburgh, PA 15221
Philadelphia, PA 19109                              t: (267) 357-0948
t: (215) 545-8800                                       nia@alcenter.org
chaviland@mceldrewpurtell.com               bretgrote@abolitionistlawcenter.org
jcoyle@ mceldrewpurtell.com


Date: June 01, 2023

October 5, 2021

Philadelphia Mayor's Office
1401 John F Kennedy Blvd
Philadelphia, Pa 19107

Dear Mayor Kennedy

My name is Sholonda Gregory, I'm a mother, sister, daughter, ex-wife, and a Lieutenant in the Philadelphia Department of Prisons. I cannot be reticent any longer and see inmates housed under these conditions The system has become so desensitized that Power and Prestige are more important than the Human rights of inmates. This Narcissistic Leadership has ignored a cry out for help from Inmates and Correctional Staff. It is heart breaking having worked for the Prisons for 23 years and see what it has succumb to.
Inmate's Human Rights, Civil Liberties, 8th Amendment Rights, Civil Rights and Rights for due process have all been Violated. It is a moral responsibility for me to bring conditions to an outside Administration who can make changes or reform the Prison System.

The current Administration need to be held accountable for creating a hostile work environment, failing to provide a safe, secured and humane environment. Failing to acknowledge Correctional Staff resigning at alarming rate in the last 18 months, Making Staff fabricate Time-Out of-Cell Reports for the courts, Untruthfulness of Staff Rosters, (padding) leaving Officers on the Prison complement to show they out Family medical Leave, Injured on Duty, or leaving them in the pool to show call outs, willfully knowing they have left the system.
Failing to provide adequate Personal Protective Equipment during pre-pandemic and post pandemic to Inmates and Correctional staff until a Class Action lawsuit was filed April 20th, 2020, by several inmates and they still failed to provide appropriate PPE for staff.  Failing to approve Correctional Staff hazardous pay during the pandemic and we are considered essential employees.

I'm currently assigned to The Philadelphia Industrial Correctional Center, I, was the Lieutenant on duty when a Major Disturbance happen on July 4th, 2021, on Delta Unit. Hazmat Suits, Shields and Batons had to be deployed to gain compliance of the unit. Inmates had flooded the unit, feces all over the unit due to flooding of sinks and toilets, several inmates broke out cell windows, Officers had to literally put their safety on the line to gain compliance.
I was assigned to the Max-side of the Jail on August 20th, 2021, when the Riot occurred on H2, G2, and F1. Inmates breached their cell doors causing damage to the facility breaking video surveillance cameras, electronic unit consoles, they broke plumbing pipes, water fountains dispersing fire extinguishers and barricading themselves inside the unit.

As of September 28th, 2021, The Philadelphia Department of Prisons is currently housing **4,464** Inmates **542** inmates are in Solitary Confinement throughout the system.
Philadelphia Industrial Correctional Center has **364** Inmates in Solitary Confinement which is relativity high for a small jail. The census as of the above date was **961**.

Out of **364 155** Inmates are in solitary confinement due to The Riot at The Philadelphia Industrial Center, on August 20th, 2021. **209** inmates are in Solitary Confinement at PICC prior to the riot.

Major Disturbance on July 4th, 2021, and The Riot, was caused by inmates Human Right being violated as a result they began Flooding, breaking cell windows, fighting, refusing to go back in cell, hunger strikes, creating Major Disturbances, banging on cell doors, popping out of cells due to inoperable locks not being replaced or repaired. Other examples are:

1   Disciplinary and Administration Segregation Hearings are not being held by Deputy Wardens or signed off by the Warden, sanctions given by the disciplinary hearing Captain are ignored therefore, Inmates are in Solitary Confinements for extremely long lengths of times some with minor infractions.

2   Restrictive Housing unit or solitary confinement units at PICC are held on Quarantine for long lengths of time (more than 45 days) even though they don't come out of cells to be exposed to Covid-19

3   They are not given an hour of recreation time therefore they are locked in 24 hours a day.

4   They are not able to utilize tablets, have writing paper, they are not allowed commissary, no access to hot water for food, inmates aren't able shower.

5   No communication with family members, they are not seen by Social Workers, Chaplains or Mental Health to talk about their mental state for being in solitary confinement for long lengths of time. only time they see mental health social workers, briefly, is to be held longer in Confinement.

6   The inmates who are housed in General Population Units are not given three hours of Recreation if they do come out, they must choose between shower, phone calls or recreation.

7   They have no access to law library, they are not given their legal mail, no opportunity to get jobs within the prison.

There have been approximately four homicides that have occurred inside the facilities and one outside The Curran Fromhold Correctional Facility. This Administration must think Correctional Staff is exempt from being murdered inside these facilities.
The mendacity, hypocrisy and poor Leadership at the highest level has failed to maintain the Safety and Security of our Prison System not Staff Shortage or Lack of reporting staff. Staff Shortage has been blamed for everything.

Where is the "Money"? Commissioner Blanche Carney has changed Philadelphia Prison System into the **Department** of Prisons to get funding from the State and Government for Programs for inmates which never manifested. Jails were closed to save the City of Philadelphia money, but it damaged the foundation of the Prisons, which is the Inmates, Correctional Officers, Sergeants, and Lieutenants. Thousands was spent on a parking lot that was built on a creek that we cannot park on because it's not safe to park. Deputy Commissioner, Terrence Clark, of Operations and Deputy Commissioner, Xavier Beaufort, of Administration who both came up the ranks ignored the severity of the closing of jails, is beyond belief.
 Millions of dollars were given to Corizon Health, GD Correctional Food Services, U.S Facilities for CFCF and RCF, and Centruion Detention Health Services. But they refused to Invest in the

foundation of the Prison system by repairing the locks on cell doors though out the system for safety of Correctional Staff, Outside Support Staff as well as the inmates.

Attached, are two pictures from Home Depot, the first picture is of a lock, like the locks on cell doors. The other picture is of a latch or dead bolt that is being installed on cell doors (instead of repairing the locks) to keep the inmates from popping out of their cells.

First, it is a Fire Hazard, installing latches on cell doors. In case of a State of Emergency, fire, Major Disturbance, Power Outage they would have to be open or closed individually. When the electronic counsel is working properly there are two buttons that are pressed simultaneously which will open all cell doors for either the inmates to step out of their cells or to step in their cells by installing latches Correctional Staff, we will not be able to use the Release buttons.  We are not trained for this new installed equipment besides, it's Inhumane treatment of Inmates In hence, inmates popping out of cell is an issue in Curran Fromhold Correctional Facility, Philadelphia Industrial Center, Detention Center, and Riverside Correctional Facility.

In conclusion,

 Deputy Commissioner Clark put out a 5-minute video he made to be shown at roll call for five days. He showed in the Video how Correctional Officers are responsible for the cell door locks being inoperable and how they allowed the inmate to obstruct the locking mechanism. However, the locks are still inoperable.
PICC is not death row. We would have less disturbances and assault on staff if we can fix the inmate population as a whole and gain back control of the Prisons but the current Administration will not listen to Rank and File. For the system to turn around it must start at the bottom, building anything was never meant to start from the top and work its way down. I hope a change can be made for the inmates housed in Solitary Confinement as well as Correctional Staff that comes after me.

I am requesting that I be protected under the Whistleblower Executive Order 9-17

Thank You in Advance

Lieutenant, Sholonda Gregory Pay Roll # 234475

Cc: Honorable Judge Berle Schiller, United States District judge of U.S District Court for Eastern District of Pennsylvania
City Council Cindy Bass
City Council Kenyatta Johnson
City Council President Darrell L Clarke
American Civil Liberties Union, Anthony D Romero
District Attorney, Larry Krasner
Office of Inspector General, Alexander F DeSantis
Pennsylvania Institutional Law Project, Director, Su Ming Yeh
File



Sent from Yahoo Mail for iPhone



Mail body: Prison locks

