# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOSEPH SIMMONS, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1644 |
| CITY OF PHILADELPHIA, et al., | |
| Defendants. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

McELDREW PURTELL

John J. Coyle, Esq.
Colin Haviland, Esq.
123 South Broad Street
Suite 2250
Philadelphia, PA 19109
T: (215) 545-8800
chaviland@mceldrewpurtell.com
jcoyle@ mceldrewpurtell.com

ABOLITIONIST LAW CENTER

Nia O. Holston, Esq.
Bret D. Grote, Esq.
PO Box 8654
Pittsburgh, PA 15221
T: (267) 357-0948
nia@alcenter.org
bretgrote@abolitionistlawcenter.org

Date: November 7, 2023

i

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Legal Standard ............................................................................................................ 2

III. Plaintiff has sufficiently alleged municipal liability under 42 U.S.C. § 1983 ..................... 3

   a. Defendants' arguments are more appropriate for summary judgment rulings rather than at the motion to dismiss stage. ..................................................................................... 3

   b. Plaintiff's Failure to Train, Supervise, and Discipline claims are sufficiently pled. ............ 5

   c. Plaintiff has sufficiently pled facts demonstrating that understaffing was result of municipal policy or custom ............................................................................................. 7

IV. Plaintiff has sufficiently alleged personal involvement of Defendants Farrell and Carney under theories of supervisory liability ........................................................................... 10

   a. Plaintiff has sufficiently alleged that Defendants Farrell and Carney were aware of obvious staffing shortages and the consequent increase in violence and deaths within the incarcerated population. ................................................................................................. 10

   b. Plaintiff has sufficiently alleged that Defendants Farrell and Carney were responsible for hiring practices, training, supervision, and staff retention of PDP. ......................................... 11

V. Conclusion ................................................................................................................. 13

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ............................................................................ 5

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-25 (3d Cir. 2014)....................................... 14

*Beenick v. LeFebvre*, No. 4:14-CV-01562, 2015 WL 2344966 (M.D. Pa. May 14, 2015).......... 15

*Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ..................................................... 6

*Bielevicz v. 38 Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) ............................................................ 6

*Bond v. Nueces Cnty.*, 2022 U.S.App.LEXIS 27460, at *27, 2022 WL 459500, C.A.5 No. 20-40050  (5th Cir. 2022)................................................................................................................ 11

*Burke v. Regalado*, 935 F.3d 960, 1001 (10th Cir. 2019).............................................................. 11

*Carter v. City of Philadelphia*, 181 F.3d 339, 357-58 (3d Cir. 1999) ............................................ 7

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) ................................................ 5

*Diaz v. City of Phila*, No. 22-cv-3286, --- F. Supp. 3d ---, 2023 WL 3011340 (E.D. Pa. Apr. 20, 2023)........................................................................................................................................ 4, 10

*Dvortsova v. City of Philadelphia*, No. 21-cv-0548, 2021 WL 3190515, at *3 (E.D. Pa. Juy 27, 2021)............................................................................................................................................. 7

*Estate of Roman v. City of Newark*, 914 F.3d 789, 798-801, 805-06 (3d Cir. 2019) ..................... 8

*Foglia v. Renal Ventures Mgmt.,* 754 F.3d 153, 154 n.1 (3d Cir. 2014) ........................................ 5

*Ford v. City of Philadelphia*, No. 12–2160, 2012 WL 3030161, *6, *7 (E.D. Pa. July 24, 2012). 7

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ............................................... 5

*Garcia v. Salt Lake City,* 768 F.2d 303, 307-308 (10th Cir. 1985) .............................................. 11

*Geist v. Ammary* No. 11–07532, 2012 WL 6762010, *7 (E.D. Pa. Dec. 20, 2012) ....................... 7

*Gioffre v. Cnty. Of Bucks*, No. CIV.A.08-4232, 2009 WL 3617742 (E.D. Pa. Nov. 2, 2009) ..... 16

*Jean v. City of Philadelphia*, No. CV 22-433, 2023 WL 4378224 (E.D. Pa. July 7, 2023) ......... 11

*Kirksey v. Ross*, 372 F. Supp. 3d 256 (E.D. Pa. 2019)................................................................... 9

*Lieberenz v. Bd. Of Cnty. Comm'r of the Cnty. Of Saguache*, 2023 U.S.Dist. LEXIS 18905 at *93, 2023 WL 1767260, D.Col. No. 21-cv-00628 (D.Col. Feb. 3, 2023) ................................ 11

*Meekins v. City of Oberlin*, 2019-Ohio-2825 (8th Dist. Ohio Ct. of Appeals 2019) .................... 11

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978) ............. 6

*Moore v. Ryan*, No. 1:12-cv-1875, 2013 WL 1339053, at *7 (M.D. Pa. Apr. 1, 2013) ................. 7

*Morgan v. Bd. of Cnty. Comm'rs*, 2010 U.S.Dist. LEXIS 154947 at *39-40, 2010 WL 11508854, W.D.Okla. No. Civ-08-1317 (W.D.Okla. Mar. 11, 2010) ......................................................... 11

*Palakovic v. Wetzel*, 854 F.3d 209, 225 n.17, 233 (3d Cir. 2017) ......................................... 13, 15

*Parkell v. Markell*, 622 F. App'x 136, 140 (3d Cir. 2015) ....................................................... 13, 14

*Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ..................................................... 6

*Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1050-1051 (10th Cir. 2022) ............................. 11

*Ramos-Vasquez v. PrimeCare Med., Inc.*, No. 09-00364, 2010 WL 3855546 at *9 (E.D. Pa. Sept. 30, 2010) .................................................................................................................................. 7

*Siehl v. City of Johnstown*, No. CV 18-77J, 2019 WL 762933, at *10 (W.D. Pa. Feb. 20, 2019) . 6

*Torres v. City of Allentown*, No. CIV. A. 07-1934, 2008 WL 2600314 at *5 (E.D. Pa. June 30, 2008) ........................................................................................................................................ 9

*Valenzuela v. Roselle*, 2021 WL 1667473 at *5 (E.D. Pa. April 28, 2021) .................................... 8

*Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017) ............................................................... 13

*White v. Brommer*, 747 F. Supp. 2d 447, 457 (E.D. Pa. 2010) ...................................................... 5

*Wilson v. Gilmore*, No. 14CV1654, 2015 WL 3866531, at *6 (W.D. Pa. June 22, 2015) ........... 15

Plaintiff Joseph Simmons, by and through the undersigned counsel, hereby files this response in opposition to Defendants' Motion to Dismiss (ECF No. 57).

## I. Introduction

Joseph Simmons was brutally raped and beaten by his cellmate while in custody of the City of Philadelphia as a pretrial detainee. Despite the City's constitutional obligation to protect people in their custody, the night of his assault there were no correctional employees supervising his housing area in Curran-Fromhold Correction Facility (CFCF). The City, Commissioner Carney, and Warden Farrell were well aware that the long standing inadequate staffing of the prison system posed a substantial threat to the safety of pretrial detainees; nonetheless, they failed to address it. The Defendants now seek dismissal of the claims against them contrary to the Third Circuit's guiding precedent, and despite plentiful factual allegations from Mr. Simmons that refute their arguments.

As explained below, Defendants' Motion to Dismiss mischaracterizes, and in some instances, completely disregards the factual allegations in the Fourth Amended Complaint. Additionally, Defendants cite few cases in support of their position, relying heavily on the *Diaz* decision – a non-precedential district court opinion – while simultaneously ignoring key distinctions between *Diaz* and the instant case. The Fourth Amended Complaint sufficiently addresses the perceived pleading inadequacies that troubled Judge Robreno in *Diaz*. *Diaz v. City of Phila*, No. 22-cv-3286, --- F. Supp. 3d ---, 2023 WL 3011340 (E.D. Pa. Apr. 20, 2023). Mr. Simmons has alleged sufficient factual matter demonstrating that Defendants Farrell, Carney, and the City of Philadelphia had knowledge of PDP's years-long staffing crisis, responsibility for hiring, training, and discipline practices, as well as overall corrections staff retention, and was deliberately indifferent in allowing these problems to persist unchecked. This deliberate

1

indifference was the moving force that led to the City's failure to protect Mr. Simmons leading to his horrific and preventable assault.

This Court should deny Defendants' Motion to dismiss for the following reasons: (1) the Defendants' arguments on *Monell* liability are prematurely raised and not appropriate for the motion to dismiss stage; (2) Mr. Simmons has pled sufficient facts to demonstrate *Monell* liability under two distinct theories of liability – that Defendants' maintained a custom of understaffing, and that Defendants' failed to train, supervise, or discipline their subordinates; and (3) Mr. Simmons has pled sufficient facts of Defendant Carney and Defendant Farrell's personal involvement to establish a supervisory liability claim. Mr. Simmons has pleaded his claims beyond what the law requires, and this Court should deny Defendants' motion.

**II.     Legal Standard**

When considering a motion to dismiss, the Court's sole inquiry is "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). To do so, the Court must accept all material facts in the complaint as true, including any reasonable inferences derived from those facts. *Foglia v. Renal Ventures Mgmt.*, 754 F.3d 153, 154 n.1 (3d Cir. 2014). The purpose of the complaint is not to prove the plaintiff's case, but to give the defendant fair notice of the plaintiff's claims to relief by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016); *see also* Fed. R. Civ. P. 8(a). As a result, the plausibility standard is not exacting; a complaint may not be dismissed merely because it appears unlikely that the plaintiff will prevail on the merits. *White v. Brommer*, 747 F. Supp. 2d 447, 457 (E.D. Pa. 2010) (citing *Fowler*, 578 F.3d at 210); *see also Phillips v. Cty. Of Allegheny*, 515 F.3d

224, 231 (3d Cir. 2008). At this stage, it is sufficient for the pleadings to allege "sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Connelly*, 809 F.3d at 789.

### III. Plaintiff has sufficiently alleged municipal liability under 42 U.S.C. § 1983

Municipality liability applies when a government's policy, practice or custom inflicts an injury, including when constitutional injury is caused by omissions, such as inadequate training, supervision, or investigation, or failure to adopt a needed policy. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Siehl v. City of Johnstown*, No. CV 18-77J, 2019 WL 762933, at *10 (W.D. Pa. Feb. 20, 2019). Municipal custom can be established via policymakers' awareness of similar unlawful conduct and failure to take precautions against future violations. *Bielevicz v. 38 Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990). For claims alleging "liability through inaction", the municipality must be shown to be deliberately indifferent to the known or obvious consequence of their policy or custom. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

#### a. Defendants' arguments are more appropriate for summary judgment rulings rather than at the motion to dismiss stage.

Defendants' arguments primarily consist of repeated demands for a level of factual detail that unfairly minimizes Mr. Simmons' factual allegations and is overall inappropriate for a motion to dismiss.[1] To the contrary, "*Monell* liability is generally not amenable to resolution at the pleading stage." *Dvortsova v. City of Philadelphia*, No. 21-cv-0548, 2021 WL 3190515, at *3 (E.D.

---

[1] Defendants' motion misleadingly cites multiple cases that are either not at the pleadings stage or differ materially to Plaintiff's complaint. For example, Defendants cite *Monell* in their assertion of what is required to "survive the pleading stage" (Defendant's Motion to Dismiss, at 6). However, nowhere in the cited pages does *Monell* discuss pleading sufficiency, nor does the case itself contain any analysis of what is required at the pleadings or motion to dismiss stage.

Pa. Juy 27, 2021) (Pappert, J.) ("Resolution of the ultimate merits of a *Monell* claim usually requires examination of matters beyond the pleadings, a task which cannot be undertaken in the context of a motion to dismiss."). Fact discovery and extraneous evidence are essential for establishing claims against municipalities. Recognizing this, the Eastern District has consistently held that plaintiffs "cannot be expected to specify and articulate which policy, procedure or custom resulted in [the alleged harm]; nor should [they] be expected to know which entity formulated each policy." *Ramos-Vasquez v. PrimeCare Med., Inc.*, No. 09-00364, 2010 WL 3855546 at *9 (E.D. Pa. Sept. 30, 2010) (Rufe, J.); *see also, Ford v. City of Philadelphia*, No. 12–2160, 2012 WL 3030161, *6, *7 (E.D. Pa. July 24, 2012) ("Ford cannot, however, prove such a pattern [of constitutional violations] without a sufficient period of discovery to adduce this evidence. . . As such, Plaintiff's claim that the City maintained a policy that failed to properly train, supervise, investigate, or discipline its officers is still too premature for the Court to dismiss from suit at this time.").

There is no requirement at the pleading stage for a plaintiff to identify a specific policy or custom in order to survive a motion to dismiss. *Moore v. Ryan*, No. 1:12-cv-1875, 2013 WL 1339053, at *7 (M.D. Pa. Apr. 1, 2013); see also *Carter v. City of Philadelphia*, 181 F.3d 339, 357-58 (3d Cir. 1999) ("The District Court's insistence that Carter must identify a particular policy and attribute it to a policymaker, at the pleading stage without benefit of discovery, is unduly harsh."); *Geist v. Ammary* No. 11–07532, 2012 WL 6762010, *7 (E.D. Pa. Dec. 20, 2012) (holding that plaintiff was entitled to discovery after identifying a policy of failing to train officers regarding proper Taser gun use.); *Ford* at *7 (E.D. Pa. July 24, 2012) ("Defendant avers that Ford's *Monell* claim must be dismissed because he has not identified a precise policy, practice, or custom which demonstrates that the City was deliberately indifferent to his constitutional rights. .. The Court

4

disagrees.")  Nonetheless, Plaintiff has done so here, providing ample evidence of a custom of understaffing and a failure to adequately train, supervise, and discipline officers.

### b. Plaintiff's Failure to Train, Supervise, and Discipline claims are sufficiently pled.

Put simply, the factual specificity Defendants demand regarding "courses of training" (Def. Mtn., p. 8) is not necessary for the pleadings stage or to overcome a motion to dismiss. However, contrary to Defendants' characterization, Mr. Simmons' allegations do much more than merely recite the elements of a *Monell* claim. Instead, Mr. Simmons' allegations point towards at least 12 distinct and specific failings in training that led to the violation of constitutional rights alleged. (4th Am. Compl. at pp. 198). *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 798-801, 805-06 (3d Cir. 2019) ("[Plaintiff] cites various examples of inadequate police training, poor police discipline, and unheeded citizen complaints. . . These alleged practices were ongoing when [the alleged harm] occurred, and the City had notice of them at that time. [Plaintiff's allegations] are enough to survive dismissal at this stage."

Moreover, Mr. Simmons' Amended Complaint notes that Officer Wilson left his post on Mr. Simmons' housing unit despite Mr. Simmons' pleas for help, which suggests that the City may not have properly trained, supervised, or disciplined its officers with regard to responding to emergencies. (4th Am. Compl. pp. 51-52). In addition, the need for some or additional training here is so obvious, such that their failure to provide such training, supervision, or discipline constitutes deliberate indifference. *Valenzuela v. Roselle*, 2021 WL 1667473 at *5 (E.D. Pa. April 28, 2021) (Gallagher, J).

Defendants primarily rely on the *Torres* and *Kirksey* decisions in their claims of factual insufficiency, from which Plaintiff's Fourth Amended Complaint is easily distinguishable. In *Torres*, the struck pleadings only offer a banal and conclusory statement regarding municipal

liability; in fact, a mere two sentences are spent alleging a lack of training. *Torres v. City of Allentown*, No. CIV. A. 07-1934, 2008 WL 2600314 at *5 (E.D. Pa. June 30, 2008). In contrast, Plaintiff's complaint goes into great factual detail: alleging the timeline and persons aware of chronic understaffing, specifically elaborating upon the types of trainings that Defendants failed to establish and tracing how this failure led to multiple, specific incidents of violence. Defendants' use of *Torres*' holdings to describe Plaintiff's present pleadings is therefore inappropriate. (Defendant's Motion to Dismiss, at 8). Meanwhile, *Kirksey's* failure to discipline claims are in relation to the harm caused by and consequent failure to discipline a single officer. *Kirksey v. Ross*, 372 F. Supp. 3d 256 (E.D. Pa. 2019). This materially differs from Plaintiff's claims, where the failure to discipline is in relation to *all* officers who left housing units unsupervised, not just the actions of a single officers. (4th Am. Compl. at pp. 10 & 198). However, it is also notable that the *Kirksey* court denied the defendant city's motion to dismiss, finding that failure to screen and failure to discipline claims were sufficiently alleged through claims that the City and policymakers had knowledge of the offending officer's past misconduct. *Kirksey* at 265-266. Here, Plaintiff's Fourth Amended Complaint similarly alleges that the City and its policymakers were aware of a systemic pattern of understaffing resulting from shortages and officers failing to show up to shifts and yet took no steps to discipline officers for leaving cell blocks unguarded or train officers regarding contingency plans.

      Taken altogether, Mr. Simmons' pleadings sufficiently establish that policymakers' failures to train, supervise, and discipline officers led to Officer Wilson's decision to leave his post without responding to an obvious emergency at hand.

### c. Plaintiff has sufficiently pled facts demonstrating that understaffing was result of municipal policy or custom

Defendants heavily rely on the *Diaz* decisions in arguing that Mr. Simmons has insufficiently alleged facts supporting a municipal policy or custom of understaffing. However, although both cases concern PDP understaffing and municipal liability, Mr. Simmons' factual situation and pleadings differ from that of *Diaz* in critical ways. The *Diaz* opinion relies on the timing and location of Mr. Diaz's death compared to the other 4 homicides at PDP institutions to find that understaffing was not "moving force behind the resulting injury." Namely, the *Diaz* court noted that the other four deaths occurred *after* Mr. Diaz's death in August 2020 and all at Curran Fromhold Correctional Facility (CFCF), instead of at the Detention Center (DC) where Mr. Diaz was held. *Diaz v. City of Phila*, No. 22-cv-3286, --- F. Supp. 3d ---, 2023 WL 3011340, at *5 (E.D. Pa. Apr. 20, 2023). In contrast, Mr. Simmons' assault occurred in late February 2021 after a string of brutal assaults and other emergencies were caused by understaffing, and after at least two more homicides at PDP following Mr. Diaz's murder. (4th Am. Compl. at pp. 97-98, 148). Plaintiff's complaint also documents that CFCF in particular had pervasive staffing shortages. (4th Am. Compl. at pp. 124-125, 128). To use the *Diaz* decisions to justify the dismissal of Plaintiff's claims is therefore inappropriate.

The Fourth Amended Complaint provides ample facts connecting Mr. Simmons' assault to a history of understaffing on the part of the City and PDP. As discussed above, Plaintiff has thoroughly elaborated upon a history of how PDP staffing policies further contributed to reductions in staffing levels. (*Id*. at pp 83-115). Plaintiff has provided ample factual matter alleging that the City was on notice of the staffing crisis prior to 2019; that the City was aware staffing levels were causing constitutional violations to inmates; and that the City failed to take reasonable measures to achieve proper staffing levels prior to Mr. Simmons' assault. Unlike in *Diaz*, Plaintiff has also

7

supplied facts alleging that staffing levels were consistently too low for years prior to his assault. Plaintiff has therefore offered evidence that the City "intentionally and with deliberate indifference has enacted policies that have disincentivized employee hiring or retention." *Diaz* at *6*.

Defendants' attempts to use *Diaz* to delegitimize the factual sufficiency of Lieutenant Gregory's whistleblower allegations is also misleading.[2] The lieutenant's allegations from the federal lawsuit establish that budget cuts Carney enacted back in 2016 directly caused PDP's

---

[2] Defendants also cite *Jean v. City of Philadelphia*, No. CV 22-433, 2023 WL 4378224 (E.D. Pa. July 7, 2023) but specifically to a section that also relies on *Diaz*'s reasoning. It is important to note that both *Diaz* and *Jean* are in conflict with nearly every other case in the country wherein inadequate staffing policies were alleged. Those cases have routinely recognized a cause of action based on a custom or policy of inadequate staffing practices without consideration for whether the City also had a policy of deincentivizing hiring. **Those cases found that a custom of understaffing alone was sufficient to state a cause of action under *Monell*.** *See e.g., Lieberenz v. Bd. Of Cnty. Comm'r of the Cnty. Of Saguache*, 2023 U.S.Dist. LEXIS 18905 at *93, 2023 WL 1767260, D.Col. No. 21-cv-00628 (D.Col. Feb. 3, 2023) ("Understaffing may constitute a municipal policy or custom that can form the basis for liability under § 1983."); *Garcia v. Salt Lake City,* 768 F.2d 303, 307-308 (10th Cir. 1985) (reasoning that deliberate indifference could be "shown by proving that there are such gross deficiencies in staffing, facilities, equipment or procedures that the inmate was effectively denied access to adequate medical care"); *Burke v. Regalado*, 935 F.3d 960, 1001 (10th Cir. 2019) (affirming jury's conclusion that sheriff was responsible for "an unconstitutional policy or custom… of poor training, inadequate staffing, and lack of urgency surrounding jail medical care"); *Morgan v. Bd. of Cnty. Comm'rs*, 2010 U.S.Dist. LEXIS 154947 at *39-40, 2010 WL 11508854, W.D.Okla. No. Civ-08-1317 (W.D.Okla. Mar. 11, 2010) ("A reasonable jury could also find from the evidence concerning conditions at the jail that the need for . . . increased staffing of the jail was so obvious and so likely to result in the violation of detainees' Fourteenth Amendment rights, resulting in injuries to or deaths of detainees, that [the sheriff] can reasonably be said to have been deliberately indifferent to such need or needs."); *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1050-1051 (10th Cir. 2022) (finding a reasonable jury could conclude that the defendant "maintained unofficial policies or customs of… inadequate staffing" with deliberate indifference which caused plaintiff's death); *Bond v. Nueces Cnty.*, 2022 U.S.App.LEXIS 27460, at *27, 2022 WL 459500, C.A.5 No. 20-40050  (5th Cir. 2022) (reversing dismissal by the District Court and finding allegations of "inadequate staffing [which] had led to insufficient monitoring of inmates" were "enough to raise a right to relief above the speculative level"); *Meekins v. City of Oberlin, 2019-Ohio-2825* (8th Dist. Ohio Ct. of Appeals 2019) (finding in Section 1983 case that "reasonable jurors could disagree as to whether the city was a moving force behind the alleged violations of [plaintiff's] constitutional rights, i.e. whether but for the city's alleged policy or custom of inadequate staffing… [plaintiff's] constitutional rights would not have been violated")

understaffing crisis via changed shifts and a mass resignation. (4th Am. Compl. at pp 86). Contrary to Defendants' implications otherwise, the Court has not previously ruled this evidence as insufficiently proving a policy or custom, as the court in *Diaz* did not review the Lieutenant's allegations prior to ruling on *Monell* liability.

Finally, Defendants' attempts to attack Mr. Simmons' allegations of deliberate indifference rely on mischaracterizations. Defendants dismiss Mr. Simmons' reference to the *Remick* court monitor reports as "unavailing," claiming that the reports explain that understaffing was created by the COVID-19 pandemic and not by any of the City's own decisions. This is simply inaccurate: nowhere in the cited monitor's report does it state that the vacancies were created by the circumstances surrounding COVID-19. In fact, the monitor's report specifically notes that the City's actions were "not responsive to the enormity of PDP's staffing crisis and fail to acknowledge the duty imposed on Defendants by this Court…". (Monitor's Second Report, Remick at 13. ECF No. 185). The complaint also highlights plenty of other factual matter regarding the City's own culpability regarding understaffing, despite Defendants' suggestion that the COVID-19 pandemic is to blame for all issues related to understaffing. This includes PDP reporting more than 5 times the vacancy rate (28%) compared to that of the Pennsylvania Department of Corrections (5.6%) (4th Am. Compl at pp. 114-115); and Remick status reports documenting that understaffing was limited to security staff and Defendants were aware that insufficient staffing would result in dangerous conditions. (4th Am. Compl at pp. 131-132).

### IV. Plaintiff has sufficiently alleged personal involvement of Defendants Farrell and Carney under theories of supervisory liability

Defendants' motion to dismiss mischaracterizes Plaintiff's Fourth Amended Complaint in their brief statement describing vicarious, rather than supervisory liability. This Circuit has held that supervisors are directly liable when they are found to be deliberately indifferent; in other words, when they "knew or w[ere] aware of and disregarded an excessive risk to the plaintiff['s] health or safety[.]" *Palakovic v. Wetzel*, 854 F.3d 209, 225 n.17, 233 (3d Cir. 2017). A plaintiff can show this by establishing the obviousness of the risk and the supervisors' failure to respond appropriately. *Id*. It is under this theory of supervisory liability that Mr. Simmons has sufficiently alleged Defendants Farrell and Carney's individual responsibilities and roles.

#### a. Plaintiff has sufficiently alleged that Defendants Farrell and Carney were aware of obvious staffing shortages and the consequent increase in violence and deaths within the incarcerated population.

First, Plaintiff has pleaded ample and specific facts supporting that Defendants Farrell and Carney had personal involvement in maintaining a custom of understaffing at PDP. The elements of deliberate indifference in the context of supervisory liability are met where a supervisor "failed to respond appropriately in the face of an awareness of a pattern of … injuries" or where "the risk of constitutionally cognizable harm is *so great* and *so obvious* that the risk and the failure of supervisory officials to respond will alone support a finding of deliberate indifference." *Parkell v. Markell*, 622 F. App'x 136, 140 (3d Cir. 2015) (emphasis added); *see also, Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

The amended complaint outlines significant factual matter alleging the pervasive and obvious pattern of understaffing failures that led to Mr. Simmons' assault. These include the 2004 limited overtime policy spurring understaffing, violence, and litigation (4th Am. Compl. at pp. 84-

10

85); Defendant Carney's 2016 reduction of staff posts causing mass resignation well before the COVID-19 pandemic (*Id.* at pp. 86); several reports sponsored by the City of Philadelphia (*Id.* at pp. 88, 92, 98, 101); PDP's own data (*Id.* at pp. 87, 99); Defendant Carney's own statements acknowledging the understaffing (*Id.* at pp. 89-90, 104); and frequent status reports from the Remick litigation over 2020-2021 (*Id.* at pp. 119, 124-136). The severity and obvious nature of PDP's understaffing crisis not only implicates Defendants by virtue of their institutional roles but offers factual matter from Defendants' *own* testimony or reports. Taking these allegations as true, Plaintiff has plausibly alleged Defendants' awareness of the obvious and predictable risk that caused Plaintiff's attack. *Parkell v. Markell*, 622 F. App'x 136, 140 (3d Cir. 2015) (outlining that facts indicating the frequency, severity, and pattern of injuries would be sufficient for suggesting supervisory awareness).

### b. Plaintiff has sufficiently alleged that Defendants Farrell and Carney were responsible for hiring practices, training, supervision, and staff retention of PDP.

A supervisor may be liable if they implement a policy, practice or custom that creates an unreasonable risk of constitutional violation and their failure to correct practices underlies consequent unconstitutional conduct. *Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 316-25 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). "Failure to" claims – including failure to train, failure to discipline, or failure to supervise – fall under the subcategory of policy or practice liability. *Id*. Whether an official may be liable for such supervisory failures is determined by a four-part test: 1) that the policy or procedures in effect at the time of the injury created an unreasonable risk of a constitutional violation; 2) the defendant-official was aware that the policy created an unreasonable risk; 3) the defendant was indifferent to that risk; and 4) the constitutional injury was caused by the failure to implement the supervisory

practice or procedure. *Id.* (holding that "the standard we announced in *Sample* for imposing supervisory liability … is consistent with *Iqbal*.")

Taking the allegations as true, the Fourth Amended Complaint states a plausible claim for relief that Defendants' practice of chronic understaffing created an unreasonable risk that a constitutional injury would occur, of which they were aware and indifferent to, and which resulted in an injury to Mr. Simmons. Defendants' motion to dismiss offers little beyond a single sentence stating that Plaintiff has insufficient factual matter regarding Defendants Farrell and Carney's responsibility for hiring practices. Def. Mtn. to Dismiss, p. 5. This blatantly ignores the many failures and omissions plaintiff has clearly outlined in the Fourth Amended Complaint. Mr. Simmons has alleged that Defendants Carney and Farrell were responsible for implementing new hiring practices and failed to ensure adequate staffing levels. (4th Am. Compl. at pp. 94). Specifically, Mr. Simmons detailed that Defendants failed to bring in staff from other municipalities, raise starting salaries, contract with staffing agencies to bring in part time officers, conduct staffing analyses, or contract with hiring agencies to recruit new staff. (*Id.* at pp. 95). Mr. Simmons has additionally elaborated upon how Defendants failed to adequately retrain staff on any of the following: contingency plans for staff failures, training staff from other units, retraining staff to handle emergencies, use of the emergency call button, and ensuring an adequate first responder system. (*Id.* at pp. 96).

Accordingly, these omissions are pled with sufficient factual specificity for the pleadings stage. *see e.g. Palakovic*, 854 F.3d at 226 (concluding that a failure to train claim was sufficient because of allegations that supervisors "provided essentially no training … and simply acquiesced" to the deficient solitary confinement policy.); *Wilson v. Gilmore*, No. 14CV1654, 2015 WL 3866531, at *6 (W.D. Pa. June 22, 2015) (finding that plaintiff had sufficiently pled requisite level

of supervisory involvement via failures to ensure training and appropriately discipline correctional officers); *Beenick v. LeFebvre*, No. 4:14-CV-01562, 2015 WL 2344966 (M.D. Pa. May 14, 2015) (allowing a similar supervisory liability claim to proceed to discovery even though, "[in] the absence of a more developed factual record, the Court is unaware of the exact contours of the Defendants knowledge of their subordinates' conduct"); *Gioffre v. Cnty. Of Bucks*, No. CIV.A.08-4232, 2009 WL 3617742 (E.D. Pa. Nov. 2, 2009) (declining to dismiss supervisory liability claims predicated on unconstitutional practices or policies, and rejecting County's reliance on summary judgment rulings, which occurred "after discovery had been pursued and all sought-after information marshalled [sic]"). Defendant's motion should be denied regarding Defendants Farrell and Carney's individual, supervisory liability.

## V.     Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in full.

Respectfully submitted,

| MCELDREW PURTELL | ABOLITIONIST LAW CENTER |
|---|---|
| /s/ John J. Coyle | /s/ Nia O. Holston |
| John J. Coyle, Esq. | Nia O. Holston, Esq. |
| Colin Haviland, Esq. | Bret D. Grote, Esq. |
| 123 South Broad Street | PO Box 8654 |
| Suite 2250 | Pittsburgh, PA 15221 |
| Philadelphia, PA 19109 | T: (267) 357-0948 |
| T: (215) 545-8800 | nia@alcenter.org |
| chaviland@mceldrewpurtell.com | bretgrote@abolitionistlawcenter.org |
| jcoyle@ mceldrewpurtell.com | |

Date: November 7, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Response in Opposition to Defendants' Motion to Dismiss the Fourth Amended Complaint was filed via the Court's Electronic Filing System and thereby served upon all parties of record.

/s/ John J. Coyle