IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH SIMMONS, | : | |
| | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | Civil No. 22-1644 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et. al., | : | Judge John M. Gallagher |
| | : | |
| *Defendants* | : | |

# **ORDER**

AND NOW, this _____ day of _____, 2025, upon consideration of the Defendants' Motion to Dismiss and Plaintiff's Response in Opposition thereto, it is **HEREBY ORDERED** as follows:

Defendants' Motion to Dismiss Defendant Charmaine Campbell is **DENIED.**

**IT IS SO ORDERED.**

        **BY THE COURT:**

_____
John M. Gallagher, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH SIMMONS, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | Civil No. 22-1644 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et. al., | : | Judge John M. Gallagher |
| | : | |
| *Defendants* | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS DEFENDANT CHARMAINE CAMPBELL**

### I.   Background

Joseph Simmons was brutally raped and beaten by his cellmate while in custody of the City of Philadelphia as a pretrial detainee. Despite the City's constitutional obligation to protect people in their custody, no staff provided protection from the assault, even though several staff members were aware that he was in fear for his life. The City and Commissioner Carney were well aware that the long-standing inadequate staffing of the prison system posed a substantial threat to the safety of pretrial detainees; nonetheless, they failed to address it.

The Parties are currently engaged in the discovery process. Plaintiff has conducted depositions of several officers, including several officers who were working the night Mr. Simmons was raped. Defendant Charmaine Campbell was one of those officers. She was notified that Mr. Simmons was in fear for his safety and instead did nothing to help. Defendant Campbell was properly named as a defendant in this matter on a timely basis under Fed. R. Civ. P. 15(c).

### II.   Procedural History

Defendants' recitation of the procedural history of this case is incomplete and therefore, misleading. Def. Mtn. at 2. While it is true that Mr. Simmons filed a *pro se* complaint on April 27, 2022 (ECF No. 2),[1] Mr. Simmons also filed a motion to proceed *in forma pauperis* on June 22, 2022 (ECF No. 8) which was granted on August 19, 2022 (ECF No. 10), and the court assumed responsibility for serving the summons and the complaint.

In its August 19, 2022 order, this Court directed Mr. Simmons to file a second amended complaint, to cure the defects in his first amended complaint. *Id*. Mr. Simmons subsequently obtained counsel, who entered their appearances in October 2022 (ECF Nos. 12-14). Mr. Simmons then filed a counseled motion for leave to file an amended complaint on December 14, 2022 (ECF No. 23). The amended complaint, which listed Defendant City of Philadelphia and various named correctional officer defendants, as well as two John Does, was docketed by this Court on December 27, 2022 (ECF No. 25), and on that date, the Court issued a summons for the named defendants (ECF No. 26). The City of Philadelphia Law Department accepted service for the City on December 29, 2022 (ECF No. 28) and the City entered its appearance (ECF No. 27). This was the operative complaint for the purposes of 15(c) relation back due to the Court's grant of IFP status to Mr. Simmons.

On February 17, 2023, four days before the original expiration of the statute of limitations, ***and well within the 90-day period of the issuance of the summons by this Court***, Mr. Simmons filed a motion for leave to file a Third Amended Complaint which included an exhibit of the proposed amended complaint. (ECF No. 34). The third amended complaint named several officers, including the previously named Defendant Correctional Officer Jessie Wilson,

---

[1] Mr. Simmons also filed a separate amended *pro se* complaint on June 7, 2022. That complaint featured two John Doe defendants – an unnamed sergeant and lieutenant. (ECF No. 5).

as well as Commissioner Blanche Carney, Warden Michele Farrell, Deputy Warden Nancy Giannetta, Sergeant Fitzgerald Dick, Sergeant Alfred Lebesco, Lieutenant Deebu Cherian, and Lieutenant Lovell Crawford. *Id*.[2] The Amended Complaint was docketed on March 9, 2023 (ECF No. 36).[3]

Separately, Defendants also claim that the City produced the logbooks on September 26, 2024 – which is simply not true. A review of the discovery provided and received on October 7 indicates that the discovery production City_54-366 contained grievance summaries, and a compilation of various written policies. It is unclear why the City would allege that the documents in question were produced on that date.

The logbooks were in fact produced on November 1, 2024 and were included in the discovery production City_1404-1523. The logbooks are relevant because they indicate for the first time which supervisors (identified by last name only) were notified of Mr. Simmons' complaints against his cellmate.[4] However, that is not the only relevant discovery that Plaintiff used in determining to add Defendants Campbell, Thomas, and Holmes to the amended complaint. On February 11, Plaintiff took the deposition of Officer Jessie Wilson, the housing officer assigned to Mr. Simmons' unit that night. Officer Wilson stated that when Mr. Simmons

---

[2] The original complaint and previously amended complaints featured the incorrect date for the incident in question. Therefore, although Plaintiff took steps to ensure he named the correct John Does prior to the expiration of the statute of limitations, later discovery revealed (1) the incident began on February 21st in the evening and continued into the overnight shift on February 22nd, and (2) that supervisors were called from various locations within CFCF to address Mr. Simmons' issues. Plaintiff sought to obtain the names of officers and supervisors assigned to A1P4. Though Defendant Campbell was assigned to C/D building on that night, she responded to the call placed by Officer Wilson for assistance and indicated that she would come to the housing area. See Exhibit A- Deposition Transcript of Jessie Wilson pages 69-72.
[3] With the exception of Warden Gianetta, and Correctional Officers Holmes and Thomas, counsel for the City has accepted service for all of the listed named defendants.
[4] Each supervisor was only identified by their last name.

informed him that he was in danger, he called for a supervisor. Exhibit A, Deposition Transcript of Jessie Wilson pages 69-72. He stated that he told Sergeant Campbell that Mr. Simmons had a verbal altercation with his cellmate that became physical and he didn't feel safe and wanted to move. *Id*. He then stated that Sergeant Campbell stated that [she] would come right down to the area to talk to them *Id*. at 70, lines 11-23. The housing logs provided by the City do not indicate that Sergeant Campbell ever came to Mr. Simmons' housing area on the night in question and Officer Wilson did not testify that he saw her before he left for the night. *Id*. at 71.

On February 27, 2025, Plaintiff notified the City of his intent to add Sergeant Campbell as a defendant, merely two weeks after deposing Officer Jessie Wilson. Exhibit B – Communications with Counsel. This was after Plaintiff provided notice of his intent to depose Sergeant Campbell and well after the City accepted service for her. Ex. B.

### III.     Legal Standard

Normally, an amended complaint filed after the statute of limitations has run must relate back to the originally filed complaint for the purposes of Fed. R. Civ. P. 15(c). However, the requirements for relation back change once a *pro se* Plaintiff files for *in forma pauperis* status. In an *in forma pauperis* action, the district court must screen the complaint for summary dismissal and issue an order either granting or denying the plaintiff's IFP status under 28 U.S.C. § 1915 (e)(2). See *Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 453-54. If the district court directs the Plaintiff to file an amended complaint, the time for service of a summons and complaint does not begin to run until the Plaintiff does so. The Third Circuit has held that:

> Once a plaintiff submits an *in forma pauperis* complaint within the time provided by the statute of limitations, and after the § 1915(a) *in forma pauperis* determination is made, the [90] day period of Rule 15(c)[(1)(C)] for satisfying the requirements for relation back of an amendment that changes or adds a party is suspended while the district court

>considers the § 1915 [(e)(2)] question. If an amendment will cure defects in the complaint, it must be permitted, and upon the filing of an appropriate amendment, the district judge must order issuance of the summons and service of the complaint. Upon the entry of that order directing service of the amended complaint, the suspension ends and the [90] day period of Rule 15(c)[(1)(C)] for service begins to run.[5]

*Id*.; accord *Paulk v. Dep't of Air Force*, 830 F.2d 79, 83 (7th Cir. 1987) ("The *in forma pauperis* statute and Rule 15(c) interact to allow for tolling during the pendency of the § 1915 motion…[O]nce a plaintiff has filed the complaint and petition to proceed *in forma pauperis* within the limitations period, the limitations period is tolled for purposes of Rule 15 (c) to allow service of summons and the complaint at the later discretion of the district court.")

Rule 15 is biased towards resolution on the merits; its purpose is "to help, not hinder, persons who have a legal right to bring their problems before the courts." Order Adopting the Revised Rules of the Supreme Court, 346 U.S. 945 (1954) (Black, J.); *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010). The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 580 U.S. 538, 550 (2010). In considering whether relation back applies, the Court should consider the Supreme Court's explanation of Rule 15:

>A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. **But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations**

---

[5] The number of days between when the Court granted Mr. Simmons' IFP status (8/19/2022) and when the Court issued the service of summons for the amended complaint (12/27/2022) was 130 days. If the statute of limitations was tolled for that time period, the statute of limitations for Mr. Simmons claims would have been extended from February 21, 2023 to July 1, 2023. By then, the complaint containing the names of several sergeants, lieutenants, and correctional officers had been filed.

> **period only because the plaintiff misunderstood a crucial fact about his identity.**

*Id.* Fed. Rule Civ. P. 15(c)(1) states that an amended pleading relates back when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. Rule Civ. P. 15(c)(1). Under Fed. R. Civ. P. 15(c)(1)(C), there are three requirements for an amendment naming new defendants to relate back to the original complaint: (1) the claim against the newly named defendants arose out of the conduct, transaction, or occurrence set forth in the original complaint; (2) the newly named defendants received such notice of the action within 90 days after the complaint was filed that they will not be prejudiced in maintaining a defense on the merits; and (3) within 90 days after the complaint was filed, the newly named defendants knew, or should have known, that but for a mistake concerning their identities, the action would have been brought against them in the first place. *Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 194 (3d Cir. 2001); see also *Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003).

The Third Circuit has recognized two possible methods by which the district courts could impute notice under Rule 15(c)(3). *See generally Singletary*, 266 F.3d 186. The first is the

"shared attorney" method, which is based on the notion that the originally named party and the parties sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id*. *See also Armstrong v. Gretsky*, 2023 WL 2903977 *10.* The fundamental issue is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the [90] day period, had some communication or relationship with, and thus gave notice of action to the newly named defendant. *Id*.

The City Solicitor's office can constitute the same attorney for the purposes of the shared attorney method for relation back. *See Smith v. City of Philadelphia*, 363 F.Supp.2d 795 (E.D. Pa. Mar. 16, 2005) ("First, all defendants are currently represented by the same attorney, the City Solicitor's Office.")  Even if defense counsel initially enters their appearance on behalf of only a few defendants, if they have since represented similarly situated defendants within the 90-day period, there is a reasonable inference that they would represent the newly added defendant. *See Sacko v. Trustees of University of Pennsylvania*, 2014 WL 5297992 *2 (E.D. Pa. Oct 15, 2014).

The second is the "identity of interest" method, and is related to the shared attorney method. "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Singletary* at 197. The Third Circuit has held that a defendant placed lower in the overall employment structure does not have a sufficient nexus of interests with his or her employer to permit the inference that notice was actually received, but could have a sufficient nexus of interests with other individual employees, even if those employees have different job titles and descriptions. *See Garvin* at 227 ("The individual police officers here have positions in the employment structure similar to that of the staff psychologist

the plaintiff sought to add as a defendant in *Singletary*…")  Even if the attorney did not have contact with a defendant until well after the statute of limitations had run, contact between defendants can be sufficient for notice purposes because it creates a reasonable inference that defendants likely talked to one another about the lawsuit. *Postell v. Philadelphia Prison System*, 2017 WL 11711141 (E.D. Pa. Sep. 21, 2017). Other courts in this district have held that city employees may share an identity of interest based upon their status as city employees. *See Armstrong v. Gretsky*, 2023 WL 2903977 (E.D. Pa. Apr. 11, 2023).

 Defendants are not prejudiced if the claims against the new defendants are similar to the claims he made against the original defendants. *Smith v. City of Philadelphia* at 802. Further, if moving defendants share the same counsel as the originally named defendants, the moving defendants are not prejudiced in assembling evidence or constructing a defense, because moving defendants' counsel had access to all evidence regarding the allegations in the amended complaint in a timely fashion. *Id*. Indeed, the City Solicitor's office undertook an investigation to find the materials and videos relative to Plaintiff's allegations. Surely, with the pending complaint in federal court, that investigation would lead to some communication that the latter parties may be joined in the action. *Singletary*, 266 F.3d at 196.  Because moving defendants will in no way be prejudiced in preparing a defense, the balancing equation contemplated by Rule 15 weighs in favor of relation back.

 The third and final requirement for relation back is that moving defendants knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against them. *Id*. at 803. The Third Circuit  has articulated that it is of no consequence whether that mistake "resulted from a lack of knowledge, rather than mere misnomer." [Arthur v. Maersk, Inc., 434 F.3d 196, 208](#) (3d Cir. 2006).

The Third Circuit has found that even a delay of five months prior to filing an Amended Complaint did not constitute "undue delay" once Plaintiff has learned of the correct identity of one of his defendants. *Moore* at 628. Moreover, the concern over "**undue delay**" is a reason to deny leave to amend but *not to deny relation back*. Arthur, 434 F.3d at 203 (citations omitted).

IV.     Argument

The Court should deny Defendant's motion. Though the applicable statute of limitations had run by the time Defendant Sergeant Campbell was added, Plaintiff's Fifth Amended Complaint filed on March 11, 2025 satisfies the requirements for relation back under F.R.C.P. 15(c)(1)(C).

Defendants have not raised the first and third prong of the requirements for relation back in their motion. However, it is undisputed that the first prong of Rule 15, that the claim against the new defendants arose out of the same conduct, transaction or occurrence contained within the original complaint, has been met. Defendants have similarly not raised the issue of prejudice in their motion, therefore, Plaintiff does not focus his argument on that claim, although there is no prejudice to the moving Defendant. Finally, Defendants have also not raised the issue of mistake concerning the party's proper identity, though it certainly was a mistake to not include Defendant Campbell, as she was aware of Plaintiff's need for assistance on the night in question.

Plaintiff can establish the notice prong of Rule 15(c), and therefore, all requirements for relation back have been satisfied. The operative complaint for the purposes of Rule 15(c) due to the interplay with § 1915, is the amended complaint that was filed on December 27, 2022, which named two John Doe defendants – a sergeant and a lieutenant. Defendant Campbell was at the time of the incident, a sergeant. Further, two sergeants were identified and named via a further amended complaint filed just 56 days later on February 17, 2023 (ECF No. 34). Those sergeants

were included because it was believed that they were the supervisors that Defendant Wilson called the night of the incident. However, though those officers were in fact assigned to Mr. Simmons' housing area, Plaintiff learned through discovery that Defendant Wilson directly spoke with Defendant Campbell, which the Plaintiff did not learn until he received the housing logs, and until Defendant Wilson's deposition. The two sergeants originally named share an attorney with Defendant Campbell via the City of Philadelphia Law Department, as all are represented by the City of Philadelphia, and they share an identity of interest in that they are similarly situated employees, who were all assigned to work at CFCF. Even if this Court finds that the initial complaint is the operative complaint for the purposes of 15(c) in contravention of the standard articulated in *Urrutia*, Defendant Campbell still has a sufficient nexus of interests with Defendant Jessie Wilson, who, like her, patrolled housing units and was responsible for the management and supervision of those areas.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss Defendant Sergeant Charmaine Campbell be denied.

| Respectfully submitted, | Dated: April 8, 2025 |
|---|---|
| **MCELDREW PURTELL** | **ABOLITIONIST LAW CENTER** |
| /S/ John J. Coyle | /S/ Nia O. Holston |
| John J. Coyle, Esq. | Nia O. Holston, Esq. |
| Colin Haviland, Esq. | Bret D. Grote, Esq. |
| 123 South Broad Street | PO Box 8654 |
| Suite 2250 | Pittsburgh, PA 15221 |
| Philadelphia, PA 19109 | t: (267) 357-0948 |
| t: (215) 545-8800 | nia@alcenter.org |
| chaviland@mceldrewpurtell.com | bretgrote@abolitionistlawcenter.org |
| jcoyle@ mceldrewpurtell.com | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH SIMMONS, | : | |
| | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | Civil No. 22-1644 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et. al., | : | Judge John M. Gallagher |
| | : | |
| *Defendants* | : | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below the Plaintiff's Response in Opposition to Defendant Charmaine Campbell's Motion to Dismiss was filed via the Court's electronic filing system and is available for downloading.

DATE: April 8, 2025          BY:          /s/ Nia O. Holston
                                          _____